NOT DESIGNATED FOR PUBLICATION

Nos. 129,560
129,561

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of N.R. and E.R.,
Minor Children.

MEMORANDUM OPINION

Appeal from Reno District Court; DANIEL D. GILLIGAN, judge. Submitted without oral argument.
Opinion filed June 26, 2026. Affirmed.

*Candace S. Bridgess*, of Kansas Legal Services, Inc., of Hutchinson, for appellant natural mother.

*Jamie L. Karasek*, assistant district attorney, and *Thomas Stanton*, district attorney, for appellee.

Before COBLE, P.J., HURST, J., and PAULA HOFAKER, District Judge, assigned.

PER CURIAM: Mother appeals the termination of her parental rights to her two young children. Mother maintains that she sought treatment for her mental health and substance use issues and met her other case plan tasks, but the evidence does not support her contentions. The evidence demonstrates Mother has an extensive history of dangerous drug use that resulted in legal entanglements and a failure to provide a stable environment for her children that she has failed to adequately address. Additionally, Mother failed to complete her case plans tasks, which would have given her an opportunity to reintegrate with her two young children.

This court finds no error with the district court's decision to terminate Mother's parental rights. Affirmed.

1

FACTUAL AND PROCEDURAL BACKGROUND

On August 29, 2024, the State petitioned the district court to find N.R., age five, and E.R., age one, to each be adjudicated a child in need of care (CINC) under K.S.A. 38-2202(d)(1) and (2) and K.S.A. 38-2202(d)(3) as to N.R. The petitions claimed that on August 28, 2024, law enforcement received a report that Mother's home did not have running water, so officers visited the home and conducted a welfare check. The petitions stated that N.R. "had not had a bath in several weeks" and had "been late to school on numerous occasions." The petitions also alleged Mother "admitted to methamphetamine use and suffering from mental health issues" and had "a history of mental health and substance abuse issues."

The petition filed on behalf of N.R. also said N.R. was the subject of an earlier CINC petition in a different case and suffers from anger issues. The petition filed on behalf of E.R. said that E.R. had lived with his maternal aunt and uncle for the previous eight months with Mother's permission, and that "[t]he family feels that [N.R.] is a danger to [E.R.] due to [N.R.'s] anger issues."

The district court issued temporary custody orders for the children, who entered the custody of the Department for Children and Families (DCF) and were placed in a kinship placement. The district court ordered Mother "to complete a drug and alcohol evaluation and a mental health intake and follow recommendations or follow through with current mental health treatment." Mother entered a no contest statement as to the allegations in the CINC petitions, and on October 16, 2024, the district court adjudicated N.R. and E.R. as CINCs—pursuant to K.S.A. 38-2202(d)(1), (2), and (3) for N.R., and K.S.A. 38-2202(d)(1) and (2) for E.R.

About six months later, in April 2025, the State moved to terminate Mother's parental rights. The State's motions alleged Mother "was diagnosed with Major

2

Depressive Disorder, Attention Deficit/Hyperactivity Disorder, General Anxiety Disorder, Post Traumatic Stress Disorder, and has a working but not active schizophrenia spectrum supposition." The motions claimed Mother's substance use, mental health, and housing instability concerns were the primary issues impacting her ability to parent when the children first entered the State's custody.

The motions alleged Mother initially followed up with seeking substance use treatment, although she ceased taking her medication due to side effects and failed to attend therapy sessions. Although the State believed Mother sought treatment for her mental health issues and was attending therapy and working on adapting to those medications in January 2025, she admitted to continuing methamphetamine use. Mother tested positive for methamphetamine on February 28, 2025. The State relied on K.S.A. 38-2269(b)(1), (3), (7), and (8) as well as K.S.A. 38-2269(c)(3) to allege Mother was unfit.

The court conducted a hearing on the matter over two days. An officer from the Hutchinson Police Department testified first and described his role in January 2025 in executing a search warrant at a residence where Mother was staying where officers found drugs in an area with items belonging to Mother. A second officer from the Hutchinson Police Department also testified about the execution of the search warrant. This officer relayed that Mother told him she recently ingested methamphetamine and would not pass a urine analysis (UA) for marijuana. As a result of the search, Mother was charged with possession of methamphetamine and drug paraphernalia.

A licensed professional counselor testified that she began seeing Mother as her mental health counselor in October 2024. The counselor testified about Mother's diagnoses, which included generalized anxiety disorder, post-traumatic stress disorder, major depressive disorder, ADHD, and the counselor's "current working diagnosis of schizophrenia spectrum and other psychotic disorder"—but the counselor admitted she

3

did not reach a conclusion on the working diagnosis "due to a lack of engagement." The counselor testified she had only met with Mother four times between October 2024 and the first day of the termination hearing, which was on June 25, 2025. The counselor's progress notes from an appointment on March 12, 2025, indicated Mother required services due to "[c]ontinued depression, continued substance misuse, continued anxiety, social, academic and occupational issues."

The counselor's progress notes also included comments that Mother reported visual and auditory hallucinations, had "religious and bizarre" delusions, and had an overall "poor" prognosis. On April 30, 2025, the counselor indicated Mother told her that she was evicted and that she needed inpatient substance use treatment. The counselor testified she did not see progress in the three sessions she had with Mother during March and April 2025. On cross-examination, the counselor testified that Mother had a good working relationship with a peer mentor, although she could not say what they worked on together.

A psychiatric nurse practitioner at Horizons testified that she provided medications to treat Mother's mental health issues and only met with Mother on February 17, 2025, and May 27, 2025, because Mother missed other appointments. The psychiatric nurse practitioner testified that Mother admitted to using methamphetamine, marijuana, and alcohol a little more than a week prior to their appointment on May 27, 2025.

A case manager for St. Francis Ministries (SFM) testified about why DCF initially got involved in the case and confirmed reintegration was the original case plan goal. Mother and the case manager met in October 2024 to discuss the case plan tasks, which were the following:

- obtain a substance use evaluation and follow all recommendations and participate in random substance use testing;

4

- obtain a mental health intake and follow all recommendations;

- provide verification of stable income;

- maintain housing and provide proof of a lease agreement and utility bills;

- notify SFM of any police contact within 48 hours and keep SFM updated on any legal cases;

- attend a parenting class and provide proof of completion; and

- sign a release of information for SFM.

The case manager testified that as of January 13, 2025, Mother reported that she was evicted in October and was living in a variety of places, including her car, and that she was working but failed to provide proof of income. In January 2025, Mother reported that she was attending mental health counseling, but the case manager testified Mother did not sign the release of information for SFM to obtain records of those meetings. The case manager testified that Mother had not obtained a substance use evaluation, but Mother had submitted to drug testing. Unfortunately, Mother's drug tests on October 1, 2024, and November 19, 2024, were both positive for methamphetamine.

According to the case manager, SFM recommended that another permanency hearing be scheduled so that adoption could be added to the case plan goal. SFM believed adoption was appropriate because of Mother's lack of progress toward reintegration, the children's young ages, and because N.R. had previously been adjudicated a CINC. She said, "roughly at the six month mark with young, young children, that's when we start asking for the Court to look at the potential for change," in reference to adding the dual

5

goal of adoption to the reintegration case plan goal. However, she admitted the agency had a goal of adding adoption closer to the four-month mark in this case.

On cross-examination, the case manager said Mother did well at the visits with her children, to which she brought food, drinks, and toys. Mother's attorney asked the case manager if she ever asked Mother if "she had issues that might be of concern that she might need some assistance with other than her drug issues." In response, the case manager explained that "[m]eeting with her, she's alert, bubbly, clean, put together. I've never had concerns with dealing with [Mother] or like I've never looked at [Mother] not oh, you need help today? I've—I've never had those concerns with her."

A second case manager with SFM testified that when she met with Mother on January 8, 2025, and January 28, 2025, Mother reported that drug tests would come back positive for methamphetamine. The second case manager described Mother as "very intelligent" and said Mother was working to get her mental health issues under control with the belief that her substance use would resolve as a result. However, according to the second case manager, by mid-February Mother was still using illegal drugs, had not obtained a substance use evaluation, lacked stable housing, and had not shown proof of income. Mother eventually reported that she secured housing at a sober living community in a nearby town.

Yet, at the time of the termination hearing Mother had not provided proof that she had: attended or completed a parenting class; a lease or utility bills demonstrating stable housing; employment; or maintained mental health services. Mother reported she obtained a substance use evaluation on June 23, 2025, just days before the termination hearing, although SFM did not have independent proof of that evaluation.

The second case manager testified that Mother's substance use and mental health concerns were impediments to her ability to care for N.R. and E.R. She also spoke about

6

Mother's "lack of overall stability" and then speculated about the impact that lack of stability could have on the children. She also testified that Mother had a hair follicle test in April 2025 that was positive for methamphetamine, THC, cocaine, and "benzo."

A reintegration supervisor with SFM testified about the prior CINC case involving N.R., stating that SFM received a referral because Mother had been arrested. The SFM supervisor testified that during that original CINC case, there was concern about Mother using methamphetamine and that she did not complete her case plan tasks until threatened with termination. The supervisor testified that N.R. resided with Mother's sister—the current placement for the children—for about a year during that original case. The State asked the district court to take judicial notice of the prior CINC case involving N.R., although N.R. was reintegrated with Mother.

The current kinship placement, Mother's sister, testified that E.R. had resided with her since May 2024 and N.R. since August 2024. She said E.R. was living with her before the CINC proceedings based on Mother's request. Mother's sister also described the serious heart issues E.R. faces.

Mother also testified. According to Mother, for about a month before the termination hearing she had been living at a sober living facility in a nearby town to find stability and get back on her feet. Mother testified that to live at the facility she must maintain sobriety, which is monitored with regular drug testing. She said she received a drug and alcohol evaluation and participated in intensive outpatient drug treatment. Mother testified that she attended daily sobriety meetings, attended a financial life skills meeting on a weekly basis, and participated in church. Mother also testified that she was employed with multiple different companies and was in the process of completing a parenting class.

When asked why it took her so long to start meeting these goals, Mother said she was originally focused on her mental health, saying she had "gone into a postpartum and major depressive . . . psychosis that was not drug related" that began in May 2024. As a result of these mental health issues, she asked her sister to take E.R. Mother explained the time it takes to find the right medication dosing for mental health: "It's not like oh, you take this pill, you're better. It's trial and error and how it reacts to your body and—and how it doesn't react to your body."

Mother maintained she gave SFM proof of employment. She also admitted the criminal case against her was pending, but she denied that the original CINC proceedings involving N.R. had anything to do with drug use. Mother spoke openly to the court and asked for more time:

> "I just wanted to take responsibility for everything. . . . I don't deny that there should be things and questions. I just want to be recognized for the actions I have taken immediately when issues have came about. . . . I just wanted to respectfully ask the Court to grant me more time to continue to show my commitment and the positive change inside I am making. I truly believe that with this opportunity, I can . . . demonstrate the ongoing growth and provide my children with a stable, caring presence they need in their lives."

On examination by the guardian ad litem (GAL), Mother said she had recently provided proof of her employment and mental health provider to SFM, and she maintained she had been properly taking her prescribed medications.

In closing, the GAL identified discrepancies in Mother's testimony about treatment and the testimony from providers, as well Mother's statements about providing employment and other verification to SFM when SFM staff reported receiving no verification from Mother on anything. The GAL testified that in her opinion the children's best interests would be served by terminating Mother's parental rights.

8

After all parties made their closing arguments, the district court addressed the evidence, first finding that while the evidence suggested that Mother had mental health issues, the State failed to provide evidence tying those issues to Mother's inability to parent. However, the court found the State had presented clear and convincing evidence regarding the other factors, focusing on Mother's drug use and saying Mother had "many, many, many opportunities at treatment." The court also took judicial notice of the 2019 CINC case for N.R., finding that that case involved methamphetamine use as well.

Following the termination hearing, the district court issued orders terminating Mother's parental rights after finding Mother unfit for the following statutory reasons: Mother was unable to care for the physical, mental, or emotional needs of the children due to the use of intoxicating substances pursuant to K.S.A. 38-2269(b)(3); a failure of reasonable agency efforts to rehabilitate the family pursuant to K.S.A. 38-2269(b)(7); Mother lacked effort to adjust her circumstances or condition to meet the needs of the children under K.S.A. 38-2269(b)(8); and Mother's failure to carry out a reasonable, court-approved plan directed toward reintegrating the children into Mother's physical custody under K.S.A. 38-2269(c)(3). The court then found Mother's condition was unlikely to change in the foreseeable future and that termination of her parental rights was in the children's best interests.

Mother timely appealed.

DISCUSSION

On appeal, Mother challenges each of the district court's findings. Mother contends there was insufficient evidence to support a finding that she was unfit, that the unfitness was unlikely to change in the foreseeable future, and that terminating her parental rights was in her children's best interests.

9

I. THE DISTRICT COURT DID NOT ERR BY FINDING MOTHER UNFIT.

Parents have a constitutionally protected liberty interest in a continuing relationship with their children. *Santosky v. Kramer*, 455 U.S. 745, 753, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697, 187 P.3d 594 (2008). A parent's interest in the care, custody, and control of their children has been recognized by the United States Supreme Court as "perhaps the oldest of the fundamental liberty interests." *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000). The issue of terminating parental rights cannot be taken lightly.

The Revised Kansas Code for Care of Children governs proceedings to terminate parental rights. K.S.A. 38-2201 et seq. Only upon a finding by "clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future" can a court proceed to determine whether termination of parental rights is in the best interest of the child. K.S.A. 38-2269(a), (g)(1). This means that the district court must make two initial findings, first that a parent is unfit, rendering them unable to properly care for their child, and, second, that such unfitness is unlikely to change in the foreseeable future.

On review of a district court's decision to terminate parental rights, this court considers the evidence in the most favorable light to the prevailing party—the State in this case—to determine whether the findings of unfitness and the likelihood of future unfitness are supported by clear and convincing evidence. *In re K.W.D.*, 321 Kan. 100, 110, 573 P.3d 221 (2025). Clear and convincing evidence means "the factfinder believes that the truth of the facts asserted is highly probable." *In re B.D.-Y.*, 286 Kan. at 697. In conducting its review, this court does not reweigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *In re Adoption of Baby Girl G.*, 311 Kan. 798, 806, 466 P.3d 1207 (2020).

10

When determining whether a parent is unfit, the district court considers a statutory list of nonexclusive factors. K.S.A. 38-2269(b). When the child is not in the parent's physical custody at the time of the determination, the district court also considers a separate list of nonexclusive factors. K.S.A. 38-2269(c). While these statutes contain several factors that may support a finding of unfitness, any one of the factors can, but does not necessarily, establish grounds for termination of parental rights. K.S.A. 38-2269(f).

Here, the district court found Mother unfit under four statutory sections: K.S.A. 38-2269(b)(3), (7), and (8), and K.S.A. 38-2269(c)(3). This court focuses on K.S.A. 38-2269(b)(3) and (c)(3) to avoid using the same facts to demonstrate unfitness under multiple subsections when such redundancy does not necessarily add to the parent's unfitness but may merely restate the reason for unfitness in a different manner. See *In re A.M.*, No. 116,391, 2017 WL 2022704, at \*4 (Kan. App. 2017) (unpublished opinion) (finding the district court "relied on the same constellation of facts to support each" statutory ground of termination such that the court "recycled its rendition of the record evidence to support unfitness on multiple statutory bases, resulting in a legal redundancy resting on a single set of factual determinations").

a. *K.S.A. 38-2269(b)(3)—Use of dangerous drugs of such a duration and nature as to render the parent unable to care for the ongoing physical, mental, or emotional needs of the child*

The district court found Mother unfit based on her continued use of dangerous drugs, namely methamphetamine, for such a duration and nature as to make her unable to care for her children pursuant to K.S.A. 38-2269(b)(3). Mother had a history of illegal drug use and mental health disorders that contributed to conditions which inhibited her ability to parent. At the time of the termination hearing, Mother had failed to accomplish tasks related to her dangerous drug use that would have enabled her to care for the

11

children. Specifically, case plan tasks required her to obtain a substance use evaluation, follow all recommendations from that evaluation, and participate in random substance use testing.

As a preliminary matter, Mother's dangerous, illegal drug use was identified as an issue inhibiting her ability to provide adequate care and support for her children. First, at the beginning of this case Mother admitted to methamphetamine use, which likely contributed to the conditions that led to Mother's original interaction with DCF—the lack of running water in Mother's home and N.R. being unbathed and not attending school regularly. Additionally, E.R. had been living with Mother's sister for several months before the CINC adjudications in this case. In January 2025, several months into this case, Mother was charged with possession of methamphetamine and drug paraphernalia. While Mother contends she had a good defense to those charges—it is undisputed that Mother was residing in a place where drugs and drug paraphernalia were present. It is also undisputed that Mother tested positive for methamphetamine about that same time. Moreover, Mother testified that she had a prior CINC case involving N.R. because she was in jail, but the record showed Mother admitted to a probation violation in that case for use of methamphetamine. So, Mother's methamphetamine use is not an anomaly and has resulted in both her involvement with law enforcement and her children's involvement with DCF.

Mother argues that she is not unfit to parent because she obtained a substance use assessment, began treatment, and was living in a sober community on the date of the termination hearing. Unfortunately, the record before the district court did not fully support Mother's testimony. While Mother reported she obtained a substance use evaluation on June 23, 2025, SFM did not have independent proof of that evaluation. Additionally, Mother failed to fill out a release of information to permit SFM to obtain records related to Mother's drug use treatment until sometime in February 2025.

The evidence shows that Mother failed to obtain or maintain sobriety and failed to complete case plan tasks related to her substance use, which was the most concerning issue for the district court. Mother used methamphetamine on an ongoing basis, including during the initial CINC proceedings involving N.R. and during the pendency of the present cases. Mother's drug tests from October and November 2024 were positive for methamphetamine. Two months prior to the termination hearing, in April 2025, Mother's hair follicle test was positive for methamphetamine, THC, cocaine, and "benzo." Mother did not seek drug use treatment until just weeks before the hearing to terminate her parental rights—and she failed to provide verification of that treatment.

Mother does not deny her use of dangerous, illegal drugs. Moreover, Mother knew that as a condition of reunification with her children she was required to seek treatment for her addiction to those dangerous drugs. Given the evidence of Mother's substance use issues and addiction, which led to Mother having involvement with law enforcement and DCF, Mother's failure to avail herself of treatment opportunities and produce clean UAs demonstrates that her dangerous, illegal drug use rendered her unable to care for the physical, mental, and emotional needs of the children. See, e.g., *In re L.C.*, No. 129,087, 2025 WL 3563156, at * 6 (Kan. App. 2025) (unpublished opinion) (parental rights termination affirmed even when mother met majority of case plan tasks because mother could not address her issues with sobriety); *In re A.R.*, No. 121,298, 2020 WL 1969324, at *9 (Kan. App. 2020) (unpublished opinion) (finding parent's "unwillingness or inability to modify . . . addictive behavior" grounds for termination of parental rights when it adversely affected the child's needs for parental love, care, and attention). Considering the evidence in the most favorable light to the State, a rational factfinder could have found it highly probable that Mother was unfit under K.S.A. 38-2269(b)(3).

Here, Mother's dangerous, illegal drug use was not the only concern that she failed to address, although it undoubtedly played a role in her failure to complete the case plan tasks to accomplish reunification.

13

b. *K.S.A. 38-2269(c)(3) – When a child is not in the physical custody of the parent and the parent fails to carry out a reasonable, court-approved reintegration plan*

In addition to the case plan tasks related to Mother's substance use, the case plan required that Mother obtain a mental health intake and follow all recommendations; provide verification of stable income; maintain housing and provide proof of a lease agreement and utility bills; notify SFM of any police contact within 48 hours; attend a parenting class and provide proof of completion; and sign a release of information for SFM to obtain related medical records. Apart from signing the release, Mother failed to complete these tasks.

Mother testified that it took her a long time to begin addressing her substance abuse issues because she was originally focused on her mental health. However, the record shows that Mother failed to follow the recommendations from her mental health intake and follow through with current mental health treatment as required by her case plan. Two health care providers testified regarding Mother's mental health treatment. The psychiatric nurse practitioner testified that she had two appointments with Mother—one in February 2025 and one in May—because Mother missed other appointments. A counselor testified she only met with Mother four times between October 2024 and the first day of the termination hearing, which was on June 25, 2025. Mother failed to address this case plan task as required.

Mother argues she made progress on her case plan tasks that should negate an unfitness finding. First, Mother contends she maintained employment and sought better employment during the case. However, Mother provided no proof of that employment or of income. Mother also claims to have entered a sober living facility, which was done near the time of the termination hearing, but Mother was unsure if the children could reside there with her. Mother also contends that she was "about three-quarters of the way through" completing an online parenting class, but there was no record of that provided to

14

the court or SFM. In short, at the time of the termination hearing, Mother had not provided proof that she attended or completed a parenting class; had not provided proof of a lease or utility bills; had not provided proof of employment; and had not maintained mental health services. While progress may have occurred, it was far from complete and with no indication of a timeline for completion.

Considering the evidence in the most favorable light to the State, a rational factfinder could have found it highly probable that Mother was unfit under K.S.A. 38-2269(c)(3). Therefore, clear and convincing evidence supports a finding that Mother was unfit under two criteria, K.S.A. 38-2269(b)(3) and (c)(3), and because one factor is enough for a court to rely on to find a parent unfit, there is clear and convincing evidence supporting the district court's finding that Mother is unfit.

II. THE DISTRICT COURT DID NOT ERR IN FINDING MOTHER'S UNFITNESS WAS UNLIKELY TO CHANGE IN THE FORESEEABLE FUTURE.

After a district court finds a parent "unfit by reason of conduct or condition which renders the parent unable to care properly for a child," as in this case, then the court must determine whether the "conduct or condition is unlikely to change in the foreseeable future." K.S.A. 38-2269(a). As with an unfitness finding, a district court's foreseeability finding must be supported by clear and convincing evidence. *In re K.W.D.*, 321 Kan. at 110. In deciding whether a parent will remain unfit for the foreseeable future, a district court may consider patterns of behavior, attributing past conduct to future behavior, and can "give weight to actions over intentions." *In re D.G.*, 319 Kan. 446, 459, 555 P.3d 719 (2024).

In reviewing the district court's foreseeability determination, this court does not reweigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *In re Adoption of Baby Girl G.*, 311 Kan. at 806. In addition, this court

analyzes this issue from the child's perspective of time because children, particularly when young, perceive time differently than adults and deserve "'permanency within a time frame reasonable to them.' *In re M.H.*, 50 Kan. App. 2d 1162, 1170, 337 P.3d 711 (2014)." *In re D.G.*, 319 Kan. at 459. Facts that support a finding that a parent will remain unfit for the foreseeable future include "when the time for completion has been extended, the parent makes little progress towards reintegration during that added time, and reintegration is still not possible or expected in the near future." 319 Kan. at 459.

While the length of this case is far shorter than many, it is not Mother's first involvement with these types of proceedings. Mother faced termination of her rights to N.R. in 2019, and that case also involved allegations that Mother suffered from mental health issues and was using methamphetamine that impacted her parenting ability. In that case Mother waited until the eleventh hour to address her case plan tasks but ultimately achieved reintegration with N.R. in 2021. Three years later, these proceedings began, with Mother's mental health and methamphetamine use again being primary concerns. Despite clear instructions that she needed to seek drug treatment, Mother delayed treatment and continued testing positive for methamphetamine and other drugs during the pendency of these cases and failed to seek treatment until a few weeks before the termination hearing. Mother maintained she needed to resolve her mental health issues before seeking drug treatment, but she failed to consistently attend meetings with mental health providers, and the counselor testified she did not see progress in the three sessions she had with Mother just before the termination hearing in March and April 2025.

There is no doubt that Mother loves her children and took steps toward reintegration. However, once again, those steps were late and shorter than necessary. This court cannot ignore Mother's pattern of drug use that has resulted in law enforcement entanglement and impaired her ability to maintain stable housing and income. Further, there was testimony about E.R.'s serious health conditions, which require a lot of attention. The district court explained that Mother's issues have "been an ongoing

16

problem for seven years" and Mother only just before the termination hearing made an effort to address her substance use issues. Mother's late attempt to address her substance use is laudable but it is not enough to show that her unfitness is unlikely to change in the foreseeable future. Given these facts, there was clear and convincing evidence that Mother's unfitness was unlikely to change in the foreseeable future, particularly given the children's young ages.

III. TERMINATION IS IN THE CHILDREN'S BEST INTERESTS.

The final question is whether termination of parental rights is in the child's best interests. In making this determination, "the [district] court shall give primary consideration to the physical, mental and emotional health of the child." K.S.A. 38-2269(g)(1). Relevant factors include the features of the child's relationship with the parent and the potential harm from losing that relationship, the prospective guardian's ability to care for the child, the potential adoptive placement options, and how achieving permanency for the child will impact the child. See *In re D.G.*, 319 Kan. at 462.

An appellate court reviews a district court's decision that termination of parental rights was in the child's best interests for an abuse of discretion. *In re R.S.*, 50 Kan. App. 2d 1105, 1114-15, 336 P.3d 903 (2014). A district court abuses its discretion if its decision is arbitrary, fanciful, or unreasonable or is based on an error of law or fact. *In re T.H.*, 60 Kan. App. 2d 536, 555-56, 494 P.3d 851 (2021).

Mother simply maintains that it was not in her children's best interests to terminate her parental rights, although she offers no supporting facts or argument. Mother does not allege that the district court ruled based on an error of law or fact, and this court finds none. The question, then, is whether "no reasonable person would agree with the district court." *In re D.G.*, 319 Kan. at 462.

17

The facts here show that the children are in kinship placement with Mother's sister and that for periods of time before this case the children resided with Mother's sister and Mother's parents. Given the young ages of the children, Mother's unfitness, E.R.'s serious health conditions, N.R. being declared a CINC twice in his young life, and the children's relationship with their kinship placement, the record supports a finding that terminating Mother's parental rights is in the children's best interest. Mother's pattern of methamphetamine use and failure to seek timely treatment or regain sobriety have negatively affected her children. These habits will continue to do so based on the evidence presented, especially coupled with evidence that Mother has ongoing mental health struggles. The testimony indicated the children were placed in kinship care, which—if appropriate—this court hopes will result in Mother having an opportunity to retain a relationship with her children. However, their best interests are served by terminating her parental rights.

CONCLUSION

The evidence established that Mother faces ongoing struggles with substance use and mental health issues. At the time of the termination hearing, she had failed to complete most of her case plan tasks. The district court's findings of unfitness, unfitness for the foreseeable future, and termination being in the children's best interests are all supported by the record. This court finds no error in the district court's decision to terminate Mother's parental rights.

Affirmed.